No. 483 June 3, 2026 233

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

VICENTE ESCALANTE,
*Defendant-Appellant.*

Washington County Circuit Court
22CR52509; A183185

Andrew Erwin, Judge.

Submitted April 8, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Anna Johnson, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for strangulation constituting domestic violence and harassment. He raises three assignments of error. In his first assignment of error, defendant contends that the trial court plainly erred by failing to reread jury instructions after the close of evidence that it had read at the start of the trial. In his second assignment of error, he contends that the trial court abused its discretion when it admitted a video of defendant's in-custody interview. In his final assignment of error, defendant contends that the trial court erred by ruling that defendant had "opened the door" for admission of photographs of the victim's bruises from a prior incident involving defendant. With respect to defendant's first assignment of error, in light of the Supreme Court's recent decision in *State v. Shine*, 375 Or 112, ___ P3d ___ (2026) (*Shine II*) (decided after briefing and argument in this case was complete), we conclude that the trial court plainly erred when it failed to reread certain jury instructions after the close of evidence. We exercise our discretion to correct that error; therefore, we reverse defendant's convictions and remand for a new trial. That disposition obviates the need for us to address defendant's third assignment of error. However, because defendant's second assignment of error is likely to arise on remand, we address that assignment of error and conclude that the trial court did not abuse its discretion when it admitted the video.

*Jury instructions:* We first address whether the trial court plainly erred when it failed to reread certain jury instructions after the close of evidence. After jury selection, the trial court discussed the court's approach to jury instructions:

> "I'm going to give [the jury] the first of two sets of written instructions that [the jury] is going to get from me. The first set of instructions just kind of talks about what's [the jury's] job, what's my job, how does this trial actually work.

> "The second set of instructions I'll give [the jury] after [the jury has] heard all of the evidence *** but before the closing arguments of the attorneys, I'll give [the jury] a second set of instructions that talks about the law that [it is] supposed to apply [to] the facts that [it has] been listening to against. That's how [the jury gets] instructions from me."

Before reading the first set of instructions, the trial court provided both parties with a printed-out draft of the first set of instructions and offered them an opportunity to object. Neither defendant nor the state objected. The trial court then provided each member of the jury with a written copy of the instructions and read them aloud before opening statements. The first set of instructions included precautionary instructions and descriptions of the functions of the court and jury. It also included instructions pertaining to the innocence of the defendant—proof beyond a reasonable doubt; defendant's statements; defendant not testifying; evaluating witness testimony; vouching; modified evidence; inferences; direct or circumstantial evidence; and the definitions of "intentionally" and "knowingly or with knowledge."

The trial lasted for two days. After the close of evidence and prior to closing arguments, the trial court provided the parties with a draft of the second set of instructions, which ultimately included instructions pertaining to certain definitions, including those for "offensive physical contact," "domestic violence," and "physical injury"; evaluating witness testimony; the defense of self-defense; and the elements of each count. The trial court asked the parties if there were "[a]ny other instructions before we go to the criminal charges that you folks are asking me to—to instruct on?" Both sides stated that they did not have any instructions to add. The trial court provided the jurors with written copies of the second set of instructions and then read them aloud.[1] After the trial court sent the jury to deliberate, it asked if either party had "[e]xceptions to the instructions as read," and, again, neither party raised any objection. The jury found defendant guilty on all counts.

Now, defendant contends that the trial court plainly erred when it failed to reread aloud after the close of evidence the jury instructions pertaining to the presumption of innocence and proof beyond a reasonable doubt, defendant's statements, evaluating witness testimony, inferences,

---

[1] It is not clear whether the trial court provided the jury a final, complete copy of the written instructions that put the first and second set of instructions together for the jury to reference while hearing the second set of instructions at the close of evidence. However, the jury ultimately had written copies of both the first and second set of instructions to consult while deliberating.

direct and circumstantial evidence, and the definitions of "intentionally" and "knowingly." Defendant concedes that his argument is unpreserved but requests that we review for plain error. An error is "plain" when it is one of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record and does not require us to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). We must further determine whether, if the trial court did plainly err, that plain error is harmless. We cannot reverse a defendant's conviction based on harmless error. *State v. Ortiz*, 372 Or 658, 671, 554 P3d 796 (2024) ("Under Article VII (Amended), section 3, of the Oregon Constitution, an appellate court may not reverse a criminal defendant's conviction based on an error—whether preserved or unpreserved—that is harmless."). If there is "little likelihood" that the error affected the verdict, the error is harmless. *Id.* (quoting *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003)). If the trial court's error is plain and not harmless, we still must decide whether to exercise our discretion to correct it. *Id.* at 672.

When deciding whether to exercise our discretion to correct a plain error, we consider a nonexclusive list of factors, including "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). We conclude that, in light of *Shine*, in failing to reread aloud the jury instructions at the close of evidence, the trial court committed plain error; that plain error was not harmless; and the gravity of the error and the ends of justice weigh in favor of our exercising our discretion to correct the plain error. Therefore, we reverse defendant's convictions and remand for a new trial.

To start, the trial court committed plain error. "[A] trial court lacks discretion to omit 'matters of law necessary for [the jury's] information in giving its verdict' from its oral presentation of the instructions"—or 'charge'—"to the jury after the close of evidence." *State v. Shine*, 334 Or

App 360, 370, 557 P3d 181 (2024), *aff'd*, 375 Or 112, ___ P3d ___ (2026) (*Shine I*) (quoting ORCP 59 B). The facts in *Shine* are very similar to those at issue here. The trial court there gave the jury, both verbally and in writing, two sets of instructions—one set before opening statements and the other over a week later after the close of evidence. *Id.* at 363-64. In the first set of instructions, the trial court included the standard instructions on "the presumption of innocence and proof beyond a reasonable doubt, defendant's statements, defendant not testifying, evaluating witness testimony, inferences, direct and circumstantial evidence, and the definition of 'knowingly and with knowledge.'" *Id.* at 363. For its reading of the second set of instructions, the trial court, over the defendant's objection, omitted the instructions just listed and instead focused largely on definitions of terms in the offenses and those offenses' elements in its verbal instructions to the jury. *Id.* at 363-64.

On appeal, the defendant in *Shine* contended that the trial court's refusal to reread the omitted instructions aloud to the jury after the close of evidence was error under ORCP 58 B and 59 B. *Id.* at 366. The state argued that the trial court did not err, because, pointing to the same rules as defendant, when to read certain instructions—either before the start of trial or as part of the charge to the jury after the close of evidence—was up to the trial court's discretion. *Id.* at 366-67. We examined the text of ORCP 58 B and 59 B and ultimately agreed with the defendant, holding that, under those rules, the trial court "lacks discretion to omit 'matters of law necessary for [the jury's] information in giving its verdict' from its oral presentation of the instructions to the jury after the close of evidence." *Id.* at 370 (quoting ORCP 59 B). We further held, and neither party disputed, that the instructions the trial court refused to reread aloud at the close of evidence were such matters of law. *Id.* at 366-67. Therefore, we concluded that the trial court erred. *Id.* at 370.

After briefing and argument concluded in this case, the Supreme Court affirmed our holding in *Shine*. The Supreme Court explained that, while a trial court may read certain instructions both at the beginning and end of a trial, the instructions provided at the beginning that describe

"matters of law necessary for [the jury's] information in giving a verdict" are not a substitute for a complete oral statement at the close of evidence for purposes of ORCP 59 B. *Shine II*, 375 Or at 129-30.

As *Shine* makes clear, a trial court commits legal error when it fails to instruct the jury on matters of law necessary for the jury's information in giving its verdict. It is also readily apparent on this record that the trial court failed to give some of the same jury instructions that were at issue in *Shine*—including instructions regarding the innocence of defendant and proof beyond a reasonable doubt, defendant's statements, evaluating witness testimony, inferences, direct and circumstantial evidence, and the definition of knowingly—which here, like in *Shine*, the state does not dispute are matters of law necessary for the jury's information in giving its verdict. Given the holding in *Shine*, it is obvious that the trial court erred.[2] Therefore, the trial court plainly erred in failing to reread the relevant instructions at the close of evidence.

Because the trial court committed plain error, we next consider whether that error was harmless and, if it was not, whether we will exercise our discretion to correct it. *State v. Brown*, 327 Or App 592, 599, 536 P3d 1069 (2023). In *Shine*, the Supreme Court concluded that the trial court's error was not harmless. *Shine II*, 375 Or at 131. Specifically, the Supreme Court explained that "[t]he instructions that the trial court declined to reread at the close of the case were important instructions that protect defendants' constitutional rights." *Id.* at 130 (citing Or Const, Art I, § 12 (right not to be compelled to testify against self), ORS 10.095(6) (providing that in criminal cases, jurors are to be instructed that "a person is innocent of a crime or wrong until the prosecution proves otherwise, and guilt shall be established beyond a reasonable doubt"), and *State v. Sperou*, 365 Or 121, 133, 442 P3d 581 (2019) (acts that undermine the presumption of innocence may deprive defendants of a fair

---

[2] The state contends that any error is not "obvious." In doing so, the state argues that the record supports a conclusion that defense counsel made a conscious decision to refrain from objecting to the trial court's instructions. We address that consideration in our discussion on whether to exercise our discretion rather than on whether the error was plain.

trial)). The Supreme Court further explained that "a party's argument is not a substitute for instructions from the court." *Id.* at 131. It also discussed "recency bias," emphasizing that timing matters, and explaining that we do not assume that an oral instruction at the beginning of a trial will be as effective as an instruction delivered right before deliberation. *Id.*

Here, the state contends that, for purposes of assessing whether the error was harmless, this case differs in important ways from *Shine*. In so arguing, the state primarily focuses on the fact that the trial in this case took place over the course of two days instead of eight, making the time shorter between when the first set of instructions were given and when the jury went to deliberate. Although the trial was shorter in this case, a substantial amount of time, during which the jury was inundated with all the information associated with the case itself, still passed between when the trial court read the first set of instructions and when the jury was sent to deliberate. Therefore, we hold that the reasoning in *Shine* controls, and the trial court's error was not harmless.

Finally, we exercise our discretion to correct the trial court's error. "A court's decision to recognize unpreserved or unraised error *** should be made with utmost caution." *Ailes*, 312 Or at 382. Again, in making that decision, some of the factors we consider are "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served." *Id.* at 382 n 6. We recognize that the trial court provided defendant opportunities to object to the method and contents of the trial court's instructions and that defendant did not object. Thus, in that sense, the purposes of preservation were not served. We nevertheless believe that that is outweighed by the gravity of the error and the ends of justice in this case.

As the Supreme Court emphasized in *Shine*, the instructions that the trial court failed to reread are intended to "protect defendants' constitutional rights." *Shine II*, 375

Or at 130. In failing to include instructions pertaining to those rights in its charge to the jury, the trial court created a significant risk that defendant's constitutional rights would not be adequately protected. The jury deciding defendant's case was not, for example, instructed at the close of evidence that defendant is innocent unless and until proven guilty beyond a reasonable doubt. *See* UCrJI 1009. The jury was also not charged with what it means for there to be reasonable doubt. *Id.* The omission of such information is especially problematic when the trial court told the jury before trial that the "second set of instructions * * * talks about the law that you're supposed to apply [to] the facts that you've been listening to against." Thus, despite telling the jury that the second set of instructions would tell them the law they needed to apply, the charge to the jury here failed to "communicate all of the information fundamental to the fairness of our criminal justice system." *Shine I*, 334 Or App at 373. Any confusion about the basic constitutional principles on which our criminal justice system is built is very likely to affect the jury's verdict. Therefore, we exercise our discretion to correct the trial court's error.

*Admission of interview video:* Although we reverse and remand for a new trial based on defendant's first assignment of error, we nevertheless address his second assignment of error because it is likely to arise on remand.[3] *State v. Savage*, 305 Or App 339, 342, 470 P3d 387 (2020) (explaining that we will consider issues likely to arise on remand when the trial court "has determined a question of law that will still be at issue after the case is remanded"). In that assignment of error, defendant contends that the trial court abused its discretion in admitting a video of defendant's interview with police while in custody. *See* OEC 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury * * *."). In defendant's view, though relevant, the

---

[3] In contrast, defendant's third assignment of error—in which he claims that the trial court erred in admitting evidence that it had previously ruled would be excluded but then admitted after concluding that defendant had opened the door to it—is not likely to arise on remand. Having received an evidentiary ruling in his favor, it is unlikely that defendant would then proceed to re-open the door. We therefore do not address it.

prejudicial nature of the video outweighed its probative value. We review for an abuse of discretion, *State v. Boauod*, 302 Or App 67, 73, 459 P3d 903 (2020), and affirm.

When police interviewed defendant in custody, they created both a video and audio recording of that interview. The video shows defendant in a jail cell and in handcuffs. Defendant described his version of what had happened with the victim. Defendant had also sustained injuries during the altercation and police took photographs of those injuries. Defendant objected to admission of the video, arguing that it was unfairly prejudicial because it showed him in handcuffs and in a jail cell and that the state should be allowed to admit only the audio recording of the interview. In particular, defendant argued that the prejudicial effect of the visual aspect of the recording outweighed the probative value. In response, the state argued that the video showed defendant's state at the time of the interview, including his injuries and demeanor. The trial court admitted the video, concluding under OEC 403 that the video was highly probative and, because the jury would know that defendant had been taken into custody, the prejudicial effect did not substantially outweigh its probative value.

On appeal, defendant argues that the trial court abused its discretion. In his view, the video was unfairly prejudicial because the jury, having watched it, might conclude that he was a threat or dangerous because he was in a cell, handcuffed, while officers interviewed him. The trial court did not abuse its discretion. "'[U]nfair prejudice' does not mean evidence is harmful to the opponent's case—a central reason for offering evidence." *State v. O'Key*, 321 Or 285, 321, 899 P2d 663 (1995) (citations and internal quotation marks omitted). "Rather, it means an undue tendency to suggest a decision on an improper basis, commonly although not always, an emotional one." *Id.* Thus, "[t]he critical inquiry in determining whether evidence is unfairly prejudicial is whether the evidence improperly appeals to the preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish a material fact." *State v. Sewell*, 257 Or App 462, 469, 307 P3d 464, *rev den*, 354 Or 389 (2013) (internal citations omitted).

Although the video was prejudicial, the trial court did not abuse its discretion in concluding that it was not unfairly prejudicial. The jury knew that police had arrested defendant and taken him into custody. The fact that the video showed him in jail and in handcuffs, in light of that evidence, would not have tended to make the jury likely to decide the case on an emotional or otherwise improper basis.

Reversed and remanded.